THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN ALVARADO, Defendant and Appellant.

No. 5699.   Argued November 5, 1935.—Decided January 21, 1936.

*Leopoldo Tormes García* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Guayama filed an information against Juan Alvarado, charging him with an assault with intent to kill (*atentado a la vida*) in that the defendant, on November 2, 1932, in Salinas, maliciously assaulted Juan Raspaldo with the intent to kill him, by firing five revolver shots at him at close range, missing him and killing the horse he was riding and perforating with a bullet the vizor of his helmet.

The defendant pleaded not guilty and requested a jury trial, which was held on October 29, 1934, and at which several witnesses testified for both sides. A correct idea of what the evidence for the prosecution and for the defense tended to show, may be gathered from the following versions of the occurrence given by Juan Raspaldo, the person assaulted, and by Zoilo Ortiz, a witness for the defendant.

Raspaldo stated:

"I was ordered not to allow the carrying out of any political propaganda on the premises; prior to the happening of this occurrence, I had called the attention of the defendant because I knew that he was engaged in politics; then on the day to which the accusation refers, I again called his attention, and asked him how could he be made to understand that he was not to engage in political activities on the premises owned by the company, and he answered that I was bothering him too much, that I turned him out wherever I found him, that if I wished to find out what stuff he was made of, I should get off my horse; and I said that it was not a question of fighting but of carrying out administrative orders, and then he walked ahead, turned about, and fired at me five times, the shots killing the horse, and as soon as I freed myself from the horse, I fired two shots at him but missed him."

Ortiz testified thus:

"Juan Alvarado came into the settlement (*colonia*) called "Teresa" selling fish . . . I bought two pounds from him . . . And he went on and started talking with two men and then the overseer, Juan Raspaldo, arrived on horseback and told him to get out of the place, that he did not want to see him around there, and went so far as to try to run him down, at the same time drawing a pistol and cocking it . . . and then he did like this and fired, and it was when he fired that Juan Alvarado took out his pistol; and they fired several shots at each other."

At the close of the whole evidence for both parties, the judge gave full instructions to the jury. After explaining the elements which constitute the crime of assault with intent to kill (*atentado a la vida*), he charged the jury as follows:

"You must ask yourselves . . . . the following question: If the assaulted person, named Juan Raspaldo, had been killed, and if evidence had been produced in court, similar to the one presented in this case, and you had to render a verdict, would you have a sufficient basis for rendering a verdict of murder in the first or second degree? If the answer is in the affirmative, then you have sufficient elements to render a verdict of assault with intent to kill."

Then he went on to say:

"A charge of assault with intent to kill includes the offense of assault with intent to commit manslaughter."

And after explaining the elements of that crime, he stated that—

"A charge of assault with intent to kill could also support a verdict of aggravated assault and battery or one of simple assault and battery."

He gave detailed instructions on the crime of assault, stating the circumstances which render it an aggravated offense, as, for instance, when the assault is committed with a deadly weapon under circumstances not amounting to an intent to kill or maim.

Then he dwelt on self-defense and concluded by saying:

"With the foregoing instructions I submit the case to your consideration, and I appoint Matías Pomales as foreman of the jury to whom I now deliver the information, a helmet presented as evidence by the prosecution and admitted by the defendant, and a model form of verdict, which, as I said before, may be as follows: Guilty of assault with intent to kill, or guilty of assault with intent to commit manslaughter, or guilty of assault—please note—of assault, not of assault and battery, but of aggravated assault, if you consider that the aggravating circumstances have been proved, or of simple assault, or not guilty, either because the gentlemen of the jury find that the plea of self-defense has been proved or because they entertain reasonable doubts as to the guilt of the defendant."

The jury retired to deliberate and then rendered a verdict declaring the defendant guilty of assault.

Thereupon the district attorney said: "Your Honor, the district attorney thinks that this is an irregular verdict, as aggravating circumstances have been proved." The judge then said something; and the foreman of the jury stated that he was willing to explain why the jury had reached the conclusion that the defendant was guilty of simple assault. The judge declared that he did not wish to hear any explanation, and asked the prosecuting attorney: "Let us see, what does the district attorney wish?" and the latter answered: "Nothing at all; I waive all argument on this point." Finally the judge, on his own motion ordered the jury to go back and deliberate upon whether or not the assault had been committed with a deadly weapon.

The jury withdrew accordingly and again returned to the court room with the same verdict, that is, declaring the defendant guilty of simple assault; and the judge said: "But this is the same verdict," and the jury, through its foreman, answered: "That is the verdict that we, the members of the jury, wish to render." The judge remarked that he had given no instructions on simple assault. The foreman of the jury stated that he thought they had been given. The stenographer then read the instructions, and the court took a

recess for five minutes. When the session was resumed, the district attorney moved to set aside the verdict as being contrary to the evidence, and the court made the following ruling:

"In the case of *People* v. *Otero,* 4 P.R.R. 55, it was held as follows: Where the verdict of the jury has not been rendered in accordance with the law, and the court orders that a new verdict be returned, the first verdict is a nullity. Moreover, no error is committed by a trial court in refusing a verdict not rendered in accordance with the law and in directing the jury to bring in a new verdict, declaring the defendant either guilty or not guilty of the offense charged against him. In this case, the court thinks that the verdict is not in accord with the instructions given nor with the evidence introduced, and orders the jury to deliberate further and render a new verdict to the court, whichever that verdict may be."

For the third time the jury retired to deliberate and then came back into the court room with a verdict of aggravated assault. It was accepted by the court which forthwith declared the defendant guilty of aggravated assault, and set a day to pass sentence on him.

On the day set the defendant filed a motion to set aside the verdict, and for a new trial. The district attorney objected, and the court denied "the motion for a new trial." Then, according to the record, the following incident occurred:

"Counsel for defendant: Your Honor, I would ask the court to make another pronouncement.

"The Court: What is that?

"Counsel for defendant: Does the court also refuse the verdict of simple assault?

"The Court: Yes, the court refuses the verdict of simple assault because it was declared improper by the court before, and because the court has already accepted the last verdict rendered by the jury, or that of aggravated assault.

"Counsel for defendant: Then, we take exception to the refusal of the court to accept the verdict of simple assault, and as to the rest, Your Honor, the defendant is ready to receive any judgment that Your Honor may deem it proper to pronounce."

The court sentenced the defendant to six months in jail, and thereupon the defendant took the present appeal. He has assigned in his brief five errors, all of which relate to the action of the court regarding the verdicts. He asks for the following relief:

"The modification of the judgment appealed from in accordance with section 364 of the Code of Criminal Procedure; the third verdict of aggravated assault should be set aside and a judgment in accordance with the second verdict rendered by the jury, declaring the defendant guilty of simple assault, should be entered by this Honorable Court."

The Prosecuting Attorney (*Fiscal*) of the Supreme Court in his brief discusses the questions involved in the appeal and concludes by saying and proposing the following:

"In our view, the jury clearly expressed its opinion as to the guilt of the defendant, but its verdict, through error, does not conform to the pleadings or to the facts proved, and although the jury in this case followed the instructions given by the court, as the instruction on simple assault was erroneous, the jury might have disregarded it (27 R.C.L. sec. 29, 858); but as it improperly considered it, the court, according to the provisions of section 288 of the Code of Criminal Procedure in force, could have instructed the jury further and directed it to reconsider its verdict, only once. The lower court applied those provisions, but erroneously, for which reason the third verdict, although defendant raised no timely objection to its reception by the court, can not be upheld, as it involves a fundamental error of procedure; and the first verdict can not and should not be upheld either, because it is contrary to law and because the second was refused by the lower court; and hence, unless this Court thinks otherwise, the proper action would be to order a new trial."

Both the appellant and the appellee agree that the district court erred, but their views differ as to the judgment that should be rendered by this Supreme Court in deciding the appeal. The appellant asks that the judgment appealed from be modified, and the appellee that it be reversed. The modification requested by the appellant is in the sense of

declaring the defendant guilty of simple assault instead of finding him guilty of aggravated assault, which means that instead of being sentenced, as he was by the trial court, to six months in jail, at most he could be sentenced to pay a fine of fifty dollars and, in default of such payment, to be confined in jail one day for each dollar left unpaid. The reversal requested by the prosecuting attorney (*Fiscal*) would be for the purpose of holding a new trial, wherein a judgment in accordance with the law and the facts might be entered.

An analysis of the whole evidence introduced by the prosecution and by the defendant really shows that the latter used a deadly weapon to assault Raspaldo, whether he did so with intent to commit murder or manslaughter or to do bodily harm, or in self-defense, and hence the proper verdict would have been either of assault with intent to kill, of assault with intent to commit manslaughter, of aggravated assault, or of not guilty, and the trial court should have confined its instructions to those verdicts.

But the court actually went further and instructed the jury that it could also find the defendant guilty of assault, and the jury entered its verdict in accordance with the instructions and declared the defendant guilty of assault.

It was not a verdict that might be termed informal or defective, in which case the situation would be different, but a general, formal verdict.

If the court considered that the verdict was not in accordance with the law, it could have explained to the jury the reason for its opinion, and should have commenced by correcting its own instructions. It failed to do so. It confined itself to directing the jury to deliberate on the question of whether or not the assault had been committed with a deadly weapon.

The jury again returned the same verdict, and through its foreman definitely informed the court that that was the verdict which the members of the jury desired to render; a

verdict which was still a general, formal one, and was in accordance with the instructions received, to which no objection was made by either of the parties and which the defendant has finally and expressly accepted, doubtless as he deems them to be favorable to him.

Under the law, the only thing for the court to do was to enter that verdict as the one returned by the jury in the case.

Section 288 of the Code of Criminal Procedure reads as follows:

"Section 288.—When there is a verdict of conviction in which it appears to the court that the jury have mistaken the law, the court may explain the reason for the opinion, and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal the court can not require the jury to reconsider it. If the jury render a verdict which is neither general nor special the court may direct them to reconsider it, and it can not be recorded until it is rendered in some form from which it can be clearly understood."

"And if after the reconsideration, they return the same verdict, it must be entered (*deberá hacerse constar en autos*)." "*It must be entered*," reads the original English text of the statute. This is a definite provision which admits no other construction, in a case like the one at bar, that the verdict (subject, of course, to further proceedings authorized by the law) should have been entered as final, the court being without power to send the jury back for a third deliberation, which resulted in the verdict of aggravated assault that both parties agree can not stand.

This conclusion appears the more inevitable when it is considered that it is not absolutely clear that the instruction as to assault given by the court was erroneous. The court was not bound to give it under the evidence, but it perhaps could have given it, as the crime of aggravated assault was necessarily included in the crime of assault with intent to kill with which the defendant was charged. Section 286 of the Code of Criminal Procedure.

418

In one of the oldest cases decided in California, *People v. Vanard*, 6 Cal. 562, the Supreme Court of that State said:

"The next objection which is urged, is the informality of the verdict. The defendant was indicted for 'an assault with the intent to commit murder.' The jury found the prisoner 'guilty of an assault with the intent to do bodily injury.'

"In the case of *The People* v. *Nugent*, (4 Cal. 341), we held that an indictment for an assault with a deadly weapon, with the intent to do great bodily injury, need not contain the allegation that the same was 'committed without considerable provocation;' that although such language qualifies the character of the offense, yet it does not enter into the gist of the charge; that the words are a negative qualification of the offense which need not be averred, but must be relied on for defense on the trial.

"In the present case it is apparent that the verdict does not find the prisoner guilty of the crime charged in the indictment, to wit: 'an assault with an intent to commit murder.' Let us, then, inquire if there is any lesser offense embraced in this charge of which the prisoner is found guilty by the verdict. The next in grade is, 'an assault with a deadly weapon, instrument, or other thing, with the intent to inflict upon the person of another a bodily injury, where no considerable provocations appears, or where the circumstances of the assault show an abandoned and malignant heart.' Now, although the provocation and the circumstances need not be alleged in the indictment, and consequently not set out in the verdict, still it is apparent that the weapon or instrument with which the assault was committed, should be alleged and found, as the fact that the assault was made with a deadly weapon, etc., is of the substance of the offense, and distinguishes it from an ordinary assault.

"In the case of *The People* v. *Davidson*, (5 Cal. 133), relied on by the Attorney-General, the verdict found the prisoner 'guilty of an assault with a deadly weapon with the intent to commit bodily injury,' which under the decision of *The People* v. *Nugent*, already referred to, was held substantially sufficient. In this case the verdict only finds the prisoner guilty of an assault, and she cannot be punished for a felony.

"The other grounds of error are not well taken.

"The judgment of the Court below is set aside, and the Court directed to enter judgment for the crime of assault and affix the punishment according to the provisions of the one hundred and forty-third section of the Criminal Code."

In said case, the evidence must also necessarily have shown that the assault was committed with a deadly weapon, since despite the form of the verdict the trial court imposed upon the defendant the penalty attaching to the crime of aggravated assault; and the Supreme Court did not confine itself to a mere reversal of the judgment appealed from, but set it aside and remanded the cause to the court *a quo,* with directions to enter a new judgment for the crime of assault and impose on the defendant the proper penalty fixed by law, thus acknowledging as legal the verdict of assault rendered.

A similar procedure, we think, should be followed in the case at bar. By doing this, the case will be finally disposed of and relative justice, which is the only kind that the courts can deal out in many cases, will be administered herein.

The judgment appealed from will be reversed and the case remanded to the district court of its origin, with directions to declare the defendant guilty of assault in accordance with the second verdict and affix such punishment as that court may deem proper within the powers granted to it by section 5 of the Act to define and punish simple assault, etc., approved March 10, 1904, Session Laws, p. 48.